Frank W. Beilke v. Commissioner.
Beilke v. Commissioner
Docket No. 86523.
United States Tax Court
T.C. Memo 1963-5; 1963 Tax Ct. Memo LEXIS 338; 22 T.C.M. (CCH) 13; T.C.M. (RIA) 63005; January 9, 1963
Arthur J. Schmid, Jr., Esq., 161 W. Wisconsin Ave., Milwaukee, Wis., for the petitioner. Denis J. Conlon, Esq., and Vernon R. Balmes Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency in the income tax of petitioner for the taxable year *339 1955 has been determined by respondent in the amount of $418.11. The issues raised by the pleadings are (1) whether the gain derived by petitioner from the sale of Christmas trees is capital gain or ordinary income; (2) whether the correct amount of such gain is as set forth in the notice of deficiency; and (3) whether respondent's computation of petitioner's taxable income is correct. Findings of Fact Petitioner resides at Milwaukee, Wisconsin. He filed his individual income tax return for the taxable year 1955 with the district director at that city. In the early spring of 1948 petitioner arranged with a nursery for the planting of Scotch pine seeds for an expenditure of $25. In May 1950, petitioner purchased from the nursery for $600, 20,000 seedling trees which had grown from the planting. Sometime prior to that date petitioner and Arthur Timm, a farmer, searched for land suitable to the growing of Scotch pine trees. Eventually they determined that about 18 acres of land owned by Timm were proper for that purpose. Petitioner and Timm thereupon, at an undisclosed date in the spring of 1950, agreed orally that the trees would be planted upon Timm's 18 acres of land, fences *340 would be maintained protecting the trees from cattle, that the expenses incident to the growing, harvesting, and sale of the trees would be shared equally between them, and that the net profits from sales would likewise be divided between them equally. Each provided personal services in the cultivation, inspection, trimming, and harvesting of the trees. Petitioner also by his sole efforts acquired the single customer for the purchase of the largest number of trees. Each provided the use of certain machinery or equipment for such purposes. Timm, because he lived where the trees grew and petitioner lived a distance therefrom in Milwaukee, collected all of the proceeds of sale, deposited the same in his bank account kept for that purpose, and, with minor exceptions, paid the necessary expenses there from. At the close of the 1955 Christmas season the net profits were divided equally between them. For the year 1955 Timm filed both Federal and State partnership returns disclosing gross receipts from tree sales of $5,933.69; trucking, labor, and supply expense of $993.72; and gross profit of $4,939.97. The partnership returns showed a division of net profits to each "partner" of $2,469.89. *341 The gross receipts and gross profit derived from the sale of trees during 1955 were as disclosed in such returns. The expenses incident to the entire transaction during 1955 were also as above indicated. The records of the tree business, the partnership returns, and the individual income tax returns of both petitioner and Timm were kept and filed, respectively, on the cash basis of accounting. The partnership return for 1955 did not contain an election to treat the cutting of the trees as a sale or exchange thereof. In his original and amended returns for 1955 petitioner treated the cutting of the trees as a capital transaction. Ultimate Findings Petitioner and Timm during the taxable year 1955 were engaged in a partnership for the conduct of a Christmas tree farm and the harvesting and sale of the produce therefrom. Petitioner did not elect during 1955 to treat the cutting of the Christmas trees as a capital transaction within the meaning of section 631(a), Internal Revenue Code of 1954. Respondent has properly computed petitioner's taxable income for the taxable year 1955. Opinion That petitioner and Timm were engaged as an oral partnership in *342 the conduct of a Christmas tree venture in 1955 is so obvious from this record as to require little discussion. They each contributed to the establishment of the tree farm. Petitioner contributed 20,000 seedling Scotch pines and Timm contributed about 18 acres of land. Each agreed with the other that the expenses of the venture and the net profits would be equally borne and shared. Each rendered personal services and provided equipment for the growing, cultivation, and harvesting of the trees. By their actions they have given what is clearly a partnership character to their oral agreement. Petitioner and Timm were entitled, should they so elect, to treat the cutting of the trees as a capital transaction under section 631(a)[1] of the 1954 Code. As a partnership, the manner of their election is clearly provided for in section 703(b) of the 1954 Code as follows: SEC. 703. PARTNERSHIP COMPUTATIONS. * * *
(b) Elections of the Partnership. - Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership, except that the election under section 901, relating to taxes of foreign countries and possessions of the United States, *343 shall be made by each partner separately. *344 Having failed to comply with the manner of election so provided, none can be held to have been made. Petitioner's election in his original and amended returns cannot cure the error. Petitioner has not filed a brief herein, did not refer in his opening statement to his contention that respondent has wrongfully computed his taxable income for 1955, and has offered no evidence which has reference thereto. We assume he has abandoned the issue. We find no error in respondent's computation contained in his notice of deficiency. Decision will be entered for the respondent. Footnotes
1. SEC. 631. GAIN OR LOSS IN THE CASE OF TIMBER OR COAL. (a) Election to Consider Cutting as Sale or Exchange. - If the taxpayer so elects on his return for a taxable year, the cutting of timber (for sale or for use in the taxpayer's trade or business) during such year by the taxpayer who owns, or has a contract right to cut, such timber (providing he has owned such timber or has held such contract right for a period of more than 6 months before the beginning of such year) shall be considered as a sale or exchange of such timber cut during such year. If such election has been made, gain or loss to the taxpayer shall be recognized in an amount equal to the difference between the fair market value of such timber, and the adjusted basis for depletion of such timber in the hands of the the taxpayer. Such fair market value shall be the fair market value as of the first day of the taxable year in which such timber is cut, and shall thereafter be considered as the cost of such cut timber to the taxpayer for all purposes for which such cost is a necessary factor. If a taxpayer makes an election under this subsection, such election shall apply with respect to all timber which is owned by the taxpayer or which the taxpayer has a contract right to cut and shall be binding on the taxpayer for the taxable year for which the election is made and for all subsequent years, unless the Secretary or his delegate, on showing of undue hardship, permits the taxpayer to revoke his election; such revocation, however, shall preclude any further elections under this subsection except with the consent of the Secretary or his delegate. For purposes of this subsection and subsection (b), the term "timber" includes evergreen trees which are more than 6 years old at the time severed from the roots and are sold for ornamental purposes.↩